**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SAM K., by and through his parents;
DIANE C.; GEORGE K.,
                        *Plaintiffs-Appellees*,

v.

STATE OF HAWAII DEPARTMENT OF
EDUCATION,
                        *Defendant-Appellant*.

No. 13-15486

D.C. No.
1:12-cv-00355-
ACK-BMK

---

SAM K., by and through his parents;
DIANE C.; GEORGE K.,
                        *Plaintiffs-Appellants*,

v.

STATE OF HAWAII DEPARTMENT OF
EDUCATION,
                        *Defendant-Appellee*.

No. 13-16452

D.C. No.
1:12-cv-00355-
ACK-BMK

OPINION

Appeals from the United States District Court
for the District of Hawaii
Alan C. Kay, Senior District Judge, Presiding

Argued and Submitted
October 9, 2014—Honolulu, Hawaii

Filed June 5, 2015

Before: A. Wallace Tashima, Johnnie B. Rawlinson,
and Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton;
Partial Concurrence and Partial Dissent by Judge
Rawlinson

**SUMMARY**[*]

**Individuals with Disabilities Education Act**

The panel affirmed the district court's judgment in an action brought by a disabled student under the Individuals with Disabilities Education Act.

The panel affirmed the district court's conclusion that the student's parents were entitled to reimbursement for the costs of a private school program because this placement was bilateral, not unilateral, and so the parents' request for reimbursement was timely under the two-year statute of limitations set forth in Haw. Rev. Stat. § 302A-443(a). Distinguishing *K.D. v. Dep't of Educ.*, 665 F.3d 1110 (9th Cir. 2011), the panel held that the placement was bilateral because the State of Hawaii Department of Education tacitly consented to the student's placement by failing to propose an alternative.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Affirming the district court's award of attorneys' fees to the student and his parents, the panel held that the district court did not abuse its discretion in reducing the hourly rate requested by counsel.

Concurring in part and dissenting in part, Judge Rawlinson agreed with the majority that the district court acted within its discretion in determining a reasonable hourly rate for the calculation of attorneys' fees. She disagreed with the majority's holding that the private school placement became bilateral due to implied consent on the part of the Department of Education.

---

**COUNSEL**

Jocelyn H. Chong, Michelle Puu (argued), and Holly T. Shikada, Deputy Attorneys General, Honolulu, Hawaii, for Defendant-Appellant/Defendant-Appellee.

Carl M. Varady, Honolulu, Hawaii, for Plaintiffs-Appellees/Plaintiff-Appellee.

---

**OPINION**

CLIFTON, Circuit Judge:

Sam K. is a disabled student. An administrative hearings officer for the State of Hawaii concluded that the State Department of Education ("DOE") failed to propose a school placement for Sam for the 2010–11 school year that was appropriate and satisfied the requirements of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400

*et seq*. The hearings officer further found that the private school program in which Sam was enrolled by his parents was appropriate.

In other circumstances, this would have entitled the parents to reimbursement by the DOE for the costs of attending the private program, but the hearings officer also concluded that the parents' request for reimbursement was untimely under Haw. Rev. Stat. § 302A–443(a). That statute sets two different limitations periods. Parents ordinarily have two years to initiate the process by requesting a hearing, but the statute requires a filing "within one hundred and eighty calendar days of a unilateral special education placement" if the request includes "reimbursement of the costs of the placement." *Id*. The hearings officer found that the private placement by the parents was "unilateral" and that their request was not filed within 180 days. Reimbursement was denied on that ground. The district court disagreed. It held that the placement was "bilateral," not "unilateral," so that the parents' request was not untimely, and concluded that the parents were entitled to reimbursement. We affirm the judgment of the district court.

The district court also awarded attorney's fees to Sam and his parents. Contending that the hourly rate used in calculating the award was too low, Sam cross-appeals the amount of the attorney's fees. We affirm that order as well.

## I.   Background

Sam K. suffers from anxiety, depression, language issues, speech issues, social issues, and central auditory processing disorder. In 2003, his parents ("Parents") removed Sam from public school and placed him in Loveland Academy, a private

institution in Honolulu, where he was enrolled every year thereafter.  The current litigation concerns Sam's placement for the 2010–11 school year.

Previous litigation between the Parents and DOE regarding the three years immediately preceding the 2010–11 school year was resolved by a settlement in May 2010 under which (1) DOE agreed to pay for Sam's tuition at Loveland for school years 2007–08 through 2009–10, (2) current information from Loveland about Sam would be provided to DOE, and (3) the Parents would participate in an "IEP Reevaluation meeting" by the end of June 2010.[1]  The Parents and DOE representatives met to discuss Sam's Individual Education Plan ("IEP") for the following year several times during the summer and into the fall of 2010.   In the meantime, the 2010–11 school year began, and Sam remained at Loveland.

The meetings extended into January 2011.  No different placement was ever agreed upon.  DOE did not present a specific public school placement until January 14, 2011, when DOE produced a signed IEP that provided that Sam would be placed in a public school program at the Windward Intensive Learning Center ("ILC").  DOE followed up on that proposal by sending to the Parents a document entitled Prior Written Notice of Department Action, giving formal notice of the ILC placement, dated January 27, 2011. Sam never joined the ILC program, remaining at Loveland instead.

---

[1] Prior to the settlement, the litigation resulted in several district court orders, one of which was published.  *See D.C. v. Dept. of Educ.*, 550 F. Supp. 2d 1238 (D. Haw. 2008).

The Parents disputed the effectiveness of the IEP and the finality of the ILC placement. The DOE stated in letters dated March 9, 2011, and April 20, 2011, that the IEP issued on January 14, 2011, was the final IEP. The Parents filed a request for a due process hearing on October 27, 2011.

Following an extensive due process hearing, the administrative hearings officer issued a 34-page Findings of Fact, Conclusions of Law, and Decision. The decision included at least five determinations that are important for the current appeal.

1. The DOE "predetermine[d] placement to be appropriate at DOE Proposed Placement [the ILC program] in advance and without any significant parental input." The hearings officer further concluded that "[t]he IDEA is violated when the DOE predetermines placement for [Sam] before the IEP is developed. In addition to being contrary to the procedural requirement that the placement be based on the IEP, pre-determination also deprived [the] Parents of meaningful participation in the IEP process."

2. The placement proposed by the DOE was "ill advised, inappropriate, and potentially disastrous to [Sam] and his education." The decision detailed reasons for that strongly-worded conclusion, but as the DOE is no longer contesting the conclusion, it is not necessary to go into them here. The important determination, also no longer disputed by DOE, was that the placement proposed by the DOE was not reasonably calculated to confer educational benefits on Sam and denied him the free appropriate public education to which he was entitled under the IDEA.

3. The Parents established that Loveland was an appropriate placement for purposes of reimbursement. The hearings officer specifically concluded that it "has provided and can provide educational instruction specially designed to meet the unique needs of [Sam], supported by such services as are necessary to permit [Sam] to benefit from instruction." (citations omitted).

4. The placement of Sam at Loveland for the 2010–11 school year was a "unilateral placement" by the Parents, without the agreement of DOE. The DOE made its position clear that the IEP process was over and the ILC placement was what it made available. The hearings officer found that DOE stated this view no later than in its letter dated March 9, 2011. This letter was received by the Parents around March 12, 2011, and so the 180-day period began running, at the latest, on March 12, 2011. The Parents' request for a due process hearing and reimbursement was filed on October 21, 2011. That was untimely as it was more than 180 days later, so the hearings officer concluded that reimbursement was precluded under Haw. Rev. Stat. § 302A–443(a). In reaching that conclusion, the hearings officer's decision discussed both the previous decision of the district court in *D.C. v. Department of Education*, 550 F. Supp. 2d 1238 (D. Haw. 2008), and our decision in *K.D. v. Department of Education*, 665 F.3d 1110 (9th Cir. 2011).

5. The Parents did not establish that DOE was responsible for the failure to have the 2010–11 IEP in place by the conclusion of the August 6, 2010, IEP meeting, which would have been only about one week after the start of the school year. In reaching that conclusion, the hearings officer observed that the IEP process was "very lengthy and very disputatious. . . . As stated by Petitioners' counsel: 'We'll

stipulate that it [the relationship between the parties] was bad.'" (alteration in original).

On appeal from the administrative decision, the district court reversed the hearings officer's finding as to the statute of limitations, but affirmed in all other respects. The district court followed its own prior decision in *D.C.*, where it held that a subsequent determination by a hearings officer in favor of a student that a private placement was appropriate, while the DOE's proposed placement was not, constituted an agreement between the DOE and the family rendering the private placement "bilateral" rather than unilateral. *See D.C.*, 550 F. Supp. 2d at 584. The district court also observed that Sam had been placed at Loveland for many years, and that the DOE had agreed in the settlement agreement to pay for the Loveland program for the preceding three years. The court noted that the DOE had not offered an IEP for Sam for those preceding years, that the settlement agreement did not provide for a change in placement, and that no IEP had been offered by the DOE by the beginning of the 2010–11 school year. Under those circumstances, the district court concluded that the "Parents' decision to continue to enroll Sam in Loveland effectively was a continuation of a bilateral placement rather than a unilateral placement." The court's order discussed our decision in *K.D.*, which held that a settlement agreement did not necessarily constitute an agreement by the DOE that continued into following years, concluding that our *K.D.* decision was distinguishable based on the facts that the district court identified.

On appeal to this court, the DOE does not challenge the first three conclusions by the hearings officer identified above, all of which were affirmed by the district court. It is, therefore, no longer in dispute regarding the 2010–11 school

year that (1) DOE breached a procedural requirement of the IDEA by predetermining Sam's placement and failing to allow for significant parental input in the IEP process, (2) the ILC placement proposed by DOE was inappropriate for Sam, and (3) the Loveland program in which Sam was enrolled by his Parents was appropriate.  DOE appeals only the decision by the district court that the Parents are entitled to reimbursement because the Loveland placement for school year 2010–11 was not "unilateral" and thus that the Parents' request was not untimely.

After the district court rendered its decision on the merits, including the Parents' entitlement to reimbursement, Sam, through his Parents, brought a motion in the district court for an award of attorney's fees and costs. Adopting a calculation made in findings and recommendation by a magistrate judge, the district court awarded fees in the amount of $77,226.93. The calculation was primarily based on 255.05 billable hours compensated at a rate of $285 per hour, with small amounts added for work done by a paralegal and for Hawaii general excise tax.  Sam's attorney sought a higher hourly rate of $375 per hour and supported that request with declarations by five Hawaii attorneys stating their opinions that such a rate was reasonable for the attorney in question. The district court noted those declarations but concluded, based on the court's familiarity with the prevailing rates in the community, that the requested hourly rate was excessive and that an hourly rate of $285 was reasonable.  The court awarded fees based on that reduced hourly rate.

Sam appeals the amount of fees awarded, raising only the issue of the reduced hourly rate.

## II. Reimbursement Claim

In a case under IDEA, this court reviews a district court's findings of fact for clear error. *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 908 (9th Cir. 2009). We review questions of law and mixed questions of fact and law de novo, unless the mixed question is primarily factual. *Amanda J. ex. rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 887 (9th Cir. 2001).

The IDEA aims to provide "all children with disabilities . . . a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]"  20 U.S.C. § 1400(d)(1)(A).  If parents believe their child is not receiving a free appropriate public education (commonly referred to as a "FAPE"), they may be able to place the child in a private program and then seek reimbursement from the public school district.  20 U.S.C. § 1412(a)(10)(C)(ii); 34 C.F.R. § 300.148(c).  The federal statute provides that the parent must seek a hearing within two years of an alleged denial of a FAPE, but permits states to set a different limitations period.  20 U.S.C. § 1415(b)(6)(B), (f)(3)(C).

Under Haw. Rev. Stat. § 302A–443(a), parents in Hawaii have two years to initiate the process by requesting a due process hearing, but a filing is required "within one hundred and eighty days of a unilateral special education placement, where the request is for reimbursement of the costs of the placement."  The statute does not define "unilateral special education placement."  There are no reported Hawaii state court decisions interpreting this provision.

Our court considered the meaning of "unilateral special education placement" as used in Section 302A–443 in *K.D.*, 665 F.3d at 1110.  We adopted a definition previously set forth in a District of Hawaii decision and held that "a unilateral special education placement occurs when one party unilaterally (i.e., without consent or agreement of the other party) enrolls the student in a special education program." *Id.* at 1122 (quoting *Makiko D. v. Hawaii*, No. 06-cv-00189, 2007 WL 1153811, at *7 (D. Haw. Apr. 17, 2007)) (internal quotation marks omitted).

In *K.D.*, a student's family reached a settlement agreement in March 2007 with the Hawaii DOE under which the DOE agreed to pay for the student's private tuition, by coincidence also at Loveland Academy, for the then-current 2006–07 school year.  The agreement provided that the student was to participate in planning for transition to a public school for the following school year, if deemed appropriate.  Before that next school year began, the DOE presented a IEP providing for placement in a public school. The family did not respond and re-enrolled the student in the Loveland program.  After a due process hearing, the administrative hearings officer concluded that the public school placement proposed by the DOE would have provided a FAPE.  The hearings officer also dismissed the family's claims for private program tuition reimbursement for the 2007–08 year.  Although the family argued that it was entitled to maintain the placement at Loveland as a "stay put" placement during the pendency of litigation, the request was rejected as untimely because the placement at Loveland for the 2007–08 year was found to have been "unilateral" and the request for reimbursement was made over a year later.

Our court affirmed that decision. In particular, we agreed that the placement for 2007–08 was properly described as "unilateral." We noted that the March 2007 settlement agreement never called for "placement" at Loveland and only required tuition reimbursement for the prior year. *Id.* at 1119. The agreement also referenced at least the possibility that the student would transition to a public school for the next year. *Id*. We observed that the "settlement agreement specified in several places that it applied only to the 2006–07 school year[.]" *Id*. at 1120. The decision to enroll the student at Loveland the following year was, therefore, a "unilateral" decision by the family. "The enrollment thus occurred without consent or agreement of the other party." *Id*. at 1122 (internal quotation marks omitted).

The DOE points to *K.D.* and argues that this case is the same. We disagree, however, and conclude that this case is different in at least one important respect.

In *K.D.* the settlement agreement explicitly contemplated a public school placement for the following year, and the DOE proposed such a placement before the next school year began. In the current case, the DOE did not present an IEP providing for a public school placement for the 2010–11 school year until January 2011, at least halfway through that year. The DOE did not make clear that its position was final until it sent a letter to that effect in March 2011, after most of the 2010–11 school year had already gone by. Prior to that time, Sam was still attending the Loveland program, as the DOE necessarily knew. The DOE had not proposed anything else, and it presumably did not intend that Sam would receive no educational services in the meantime. In those circumstances, it does not appear to us that the placement at Loveland for the 2010–11 school year was "without consent

or agreement" of DOE, as the term "unilateral" was defined in *K.D.*

Agreement may be tacit. The inclusion of "consent" as an alternative to "agreement" in *K.D.*'s definition of "unilateral" further suggests that the manifestation of agreement need not be explicit. *See generally Sierra Club v. Castle & Cooke Homes Hawaii, Inc.*, 320 P.3d 849, 861 (Haw. 2013) (recognizing "implied consent" as "[c]onsent inferred from one's conduct rather than from one's direct expression") (quoting *Black's Law Dictionary* 346 (9th ed. 2009)). Consent may be indicated by silence or inaction where such silence or inaction manifests a willingness for the conduct in question to happen. *See generally* Restatement (Second) of Torts § 892(1) (1965) ("(1) Consent is willingness in fact for conduct to occur. It may be manifested by action or inaction and need not be communicated to the actor. (2) If words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are as effective as consent in fact."); Restatement (First) of Property § 516 cmt. c (1944) ("*Manifestation of consent.* The consent from which a license arises may be manifested by conduct of any kind. The manifestation may consist in the use of language, or in conduct other than the use of language. Such conduct may consist of acts indicative of a consent by the actor to the use of his land by another, or it may consist in failure to take reasonable action when inaction may reasonably lead to an inference of consent.").

Here, the DOE knew that Sam was enrolled at Loveland for the 2010–11 school year. By waiting so long into that school year to propose a different placement, the DOE tacitly consented to his enrollment at Loveland Academy. It is true that the hearings officer found that the Parents did not prove

that the DOE was responsible for the failure to have an IEP for a public school program in place by the time that the 2010–11 school year began. But that does not change the fact that the DOE knew that Sam was going to be enrolled in Loveland in the meantime and necessarily consented to that enrollment for that school year because it had not offered another alternative.

That did not mean that the DOE was precluded from proposing something different thereafter. Had it proposed an appropriate public school placement, it might have been able to maintain the position that Sam's family should not be entitled to reimbursement for the time following the proposal of a proper public placement. But the hearings officer and the district court both concluded that the DOE's proposed placement was not appropriate and that the Loveland program was, findings that the DOE no longer disputes. For now, the only question is whether the placement at Loveland for the 2010–11 school year was "unilateral." We agree with the district court that it was not, and as a result, the 180-day limitations period did not apply. Reimbursement cannot be denied on that basis.[2]

Sam's family is entitled to reimbursement for the 2010–11 school year. We affirm the decision of the district court to that effect.

---

[2] The district court identified other reasons for reaching the conclusion that the placement was not unilateral, but we do not need to consider those other reasons.

## III.     Attorney's Fees

Sam appeals the amount of attorney's fees awarded by the district court, contending that the fees should have be calculated at a rate of $375 per hour rather than at the $285 rate used by the district court.

We review a district court's determination of whether to grant attorney's fees in an IDEA case for an abuse of discretion. *Oscar v. Alaska Dept. Of Educ. & Early Dev.*, 541 F.3d 978, 980–81 (9th Cir. 2008). We review the district court's factual determinations for clear error and the legal analysis related to the fee determination de novo. *Id.*

The district court did not abuse its discretion in using an hourly rate of $285. In support of his position, Sam's attorney presented to the district court declarations from other Hawaii attorneys who undertake IDEA or other civil rights cases on behalf of plaintiffs, stating their opinions that the requested rate of $375 per hour, in light of the attorney's training and experience, was reasonable. It was telling, however, that none of the declarations stated that any of the attorneys had actually been paid fees at that $375 rate for work of this type, or that any attorney of similar training and experience had.

Reasonable attorney's fees are to be calculated according to "the prevailing market rates in the relevant community." *Van Skike v. Dir., Office of Workers Compensation Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The burden is on the fee applicant "to produce satisfactory evidence" of the prevailing market rates. *Id.* (quoting *Blum*, 465 U.S. at 896 n. 11). District courts may consider the fees awarded by

others in the same locality for similar cases. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008); *see also Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1325 (D.C. Cir. 1982) ("Recent fees awarded by the courts or through settlement to attorneys of comparable reputation and experience performing similar work are also useful guides in setting an appropriate rate."). District courts may also use their "own knowledge of customary rates and their experience concerning reasonable and proper fees." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

That other attorneys may think that a given rate is "reasonable" does not necessarily say what the prevailing market rates actually are. That is especially true when the opinion are expressed by attorneys whose own professional interests might motivate them to favor higher rates. The D.C. Circuit has expressed skepticism about the value of declarations from attorneys that provide only conclusory statements as to the prevailing rates or whether a given hourly rate is reasonable. *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1325–26 ("The District Court's . . . inquiry is aided little by an affidavit which just offers one attorney's conclusory and general opinion on what [the relevant market] rate is. Nor is it helpful if the affiant simply states that he is familiar with the attorney and the litigation and that he thinks the fee request is reasonable."). In concluding that the requested hourly rate was excessive and that an hourly rate of $285 was reasonable, the magistrate judge noted the court's familiarity with the prevailing rates in the community and cited specific fee awards in other cases in the district. The district court accepted that recommendation. Nothing in the record gives us reason to doubt the court's assessment.

Sam's attorney also argues that the district court improperly followed a policy to "hold the line" by adopting a policy to limit fee awards to a certain rate for similar cases, citing our decision in *Moreno*, 534 F.3d at 1115.  The district court rejected a similar attack on the recommendation of the magistrate judge, noting that nothing in the recommendation indicated an effort to "hold the line."  We agree.  Indeed, we note that the $285 hourly rate awarded by the district court was, as the magistrate judge's report described, higher than the $275 rate previously awarded by the court to Sam's attorney in a different case.  In addition, the magistrate judge's report discussed an even higher hourly rate, $300 per hour, that had been awarded to another attorney in IDEA cases, noting that the attorney awarded that higher rate had many years more experience than Sam's attorney.  That discussion contradicts the claim that the court applied a policy to "hold the line."

We affirm the fee award entered by the district court.

## IV.    Conclusion

For the reasons stated above, we affirm both the award of reimbursement in No. 13-15486 and the award of attorney's fees in No. 13-15452.

Each side to bear its own costs.

**AFFIRMED.**

RAWLINSON, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the district court acted within its discretion in determining a reasonable hourly rate for the calculation of attorney's fees in this case. However, I respectfully disagree that the hotly disputed placement at Loveland Academy somehow morphed from a unilateral placement to a bilateral placement due to implied consent on the part of the State Department of Education.

Initially, it is important to note that the State Hearings Officer determined that the private placement for the 2010–2011 school year was a unilateral placement. Thus, the adjudicator in the case with the closest nexus to the case did not give "implied consent" to the placement. Relying on *K.D. v. Department of Education*, 665 F.3d 1110 (9th Cir. 2011), the same case cited by the majority, the State Hearings Officer determined that under the settlement agreement between the State Department of Education and Sam K.'s parents, the State agreed to pay tuition at Loveland only through the end of the 2009–2010 school year. That determination is undisputed. As the hearings officer also noted, the settlement agreement contained no provision regarding placement for Sam K. As the hearings officer pointed out, the settlement agreement was "not a conclusion from a detailed evaluation that determined private placement to be the *appropriate educational institution* for Student under the [Act]. . . ." (emphasis added).

The hearings officer's reasoning is supported by our analysis in *K.D.* In the context of a "stay put"[1] scenario, we held that before a favorable administrative or judicial decision can convert a unilateral placement into an agreed-upon bilateral placement, the favorable decision "must expressly find that the private *placement* was appropriate." 665 F.3d at 1118 (emphasis added). We expressly distinguished between placement of a child in an educational setting, and reimbursement of private school tuition. Quoting *Zvi D. v. Ambach*, 694 F.2d 904, 908 (2d Cir. 1982), we emphasized that "payment and placement are two different matters." *Id*. at 1119 (alteration omitted). We contrasted the settlement agreement in *Zvi D.*, where the child was "never placed in the private school—the Board of Education merely agreed to pay for his tuition . . .", with *Bayonne Board of Education v. R.S.*, 954 F. Supp. 933 (D.N.J. 1997), where the settlement agreement "actually placed the student" rather than merely agreeing to reimburse tuition. *Id*. (internal quotation marks omitted). We likened the settlement agreement in *K.D.* to that in *Zvi D.* as opposed to the one in *Bayonne*. We observed that "K.D.'s settlement agreement never called for 'placement,' and only required tuition reimbursement." *Id*. We clarified that the distinction between education placement and tuition reimbursement "is not an insignificant semantic difference." *Id*. We explained that simply because the State agrees to pay tuition at a private school for a discrete period of time, "it does not follow that, by doing so, the [State] had conducted the detailed evaluation required to determine whether Loveland was the proper educational institution for K.D. under the [Act]." *Id*. Indeed, we intimated that

---

[1] The "stay put" provision of the Individuals with Disabilities Education Act (Act) requires the continuation of a "then-current educational placement." 20 U.S.C. § 1415(j).

Loveland was not an appropriate educational placement under the Act. *See id*. at 1128 ("K.D.'s Loveland placement does not square with one of the main purposes behind [the Act]—to combat the apparently widespread practice of *relegating handicapped children to private institutions* . . .") (citation and internal quotation marks omitted) (emphasis added).

Because the settlement agreement did not place K.D. at Loveland and because the State only agreed to pay tuition for a finite time period, we concluded that the State "never affirmatively agreed to place K.D. at Loveland." *Id*. at 1121. In turn, Loveland never became K.D.'s stay put placement and "the settlement agreement did not operate to change the placement from unilateral to bilateral." *Id*. at 1122.

In a similar vein, we concluded in *Clovis Unified School District v. California Office of Administrative Hearings*, 903 F.2d 635, 641 (9th Cir. 1990), "that once the State educational agency decided that the parents' *placement* was the appropriate *placement*, it became the [stay put educational location] . . ." (citation omitted) (emphasis added); *see also School Committee of the Town of Burlington, Mass. v. Department of Education of Mass*., 471 U.S. 359, 369–70 (1985) (concluding that "placement in private schools at public expense" is appropriate under the Act "where a court determines that a private *placement* . . . was proper . . . and that an [individualized education program] calling for *placement* in a public school was inappropriate") (emphasis added).

The flaw in the district court's opinion that is repeated by the majority is that despite the fact that the settlement agreement did not mention placement as required by all the

cases that have addressed this issue, the district court conflated the reimbursement agreement into a bilateral placement agreement.  None of our precedent supports this conflated analysis.  I respectfully dissent.