NOT FOR PUBLICATION



**FILED**

**FEB 26 2021**

**SUSAN M. SPRAUL, CLERK**
**U.S. BKCY. APP. PANEL**
**OF THE NINTH CIRCUIT**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>TOWER PARK PROPERTIES, LLC,<br><div align="center">Debtor.</div> | BAP No. CC-20-1223-GFL<br><br>Bk. No. 2:08-bk-20298-BR |
| SUNSET COAST HOLDINGS, LLC,<br><div align="center">Appellant,</div><br>v.<br>HUGHES INVESTMENT<br>PARTNERSHIP, LLC, ET. AL.,<br><div align="center">Appellees.</div> | Adv. No. 2:20-ap-01010-BR<br><br>**MEMORANDUM**[1] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Barry Russell, Bankruptcy Judge, Presiding

Before: GAN, FARIS, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

This appeal arises out of litigation involving the foreclosure of the

157-acre parcel of residential real estate (the "Property") at issue in *In re*

*Tower Park Properties LLC*, Case No. 2:08-bk-20298-BR ("Tower Park

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Bankruptcy Case"), and a purported right of redemption provided for by the confirmed chapter 11[2] plan.

Appellant Sunset Coast Holdings, LLC ("Sunset") filed an action in state court seeking to enforce the right of redemption against Appellees Hughes Investment Partnership, LLC, MH Holdings II H, LLC, MH Land Holdings I-A, LLC, MH Land Holdings I-B, LLC, MH Land Holdings I-C, LLC, and MH Land Holdings I-D, LLC (collectively "Hughes"). Sunset also filed and recorded a Notice of Pendency of Action (*Lis Pendens)* (the "*Lis Pendens*") regarding the Property.

After Hughes removed the action to the bankruptcy court, it filed a motion to dismiss the complaint and a motion to expunge the *Lis Pendens*. The bankruptcy court granted both motions and awarded Hughes its reasonable attorneys' fees and costs incurred in connection with the motion to expunge the *Lis Pendens*, pursuant to California Code of Civil Procedure ("CCP") § 405.38.

Sunset opposed Hughes's requested fees of $54,877 and argued that both the hourly rates and the time spent were unreasonable. The bankruptcy court disagreed and awarded Hughes the full requested amount. Sunset has not demonstrated that the bankruptcy court abused its discretion by approving the application. We AFFIRM.

---

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

## FACTS

### A. The Tower Park Bankruptcy

In April 2010, the bankruptcy court confirmed the plan in the Tower Park Bankruptcy Case. Under the plan, Hughes agreed to modify the terms of its existing liens and provide additional exit financing. The plan provided that Tower Park Properties, LLC ("Tower Park"), Hughes, and creditor La Jolla Capital Investors, LLC ("LJCI") would enter into an Intercreditor and Subordination Agreement, under which LJCI would subordinate its existing lien to the Hughes liens and receive partial payment from the exit financing and a right of redemption if certain conditions were satisfied.

After Tower Park defaulted in January 2011, LJCI assigned its rights to Secured Capital Partners, LLC ("SCP"). Tower Park later transferred the Property to SCP, which filed a chapter 11 petition to stay foreclosure. After SCP's case was dismissed as a bad faith filing, it transferred the property back to Tower Park. Ultimately, the bankruptcy court permitted Hughes to foreclose on the Property in August 2019.

### B. The State Court Case And Adversary Proceeding

In December 2019, Sunset filed suit in the California Superior Court against Hughes, seeking to enforce a right of redemption. Sunset asserted that it acquired LJCI's right of redemption from SCP in December 2019. Within a few days of filing the complaint, Sunset filed and recorded the *Lis Pendens* regarding the Property.

4

In January 2020, Hughes removed the action to the bankruptcy court. It then filed a motion to dismiss the complaint with prejudice and a motion to expunge the *Lis Pendens* under state law.

Sunset filed a motion to remand the proceeding to state court in February 2020. After a hearing, the bankruptcy court denied Sunset's motion to remand and scheduled a hearing on Hughes's motion to dismiss and motion to expunge.

Hughes argued that Sunset did not file or serve the *Lis Pendens* in compliance with CCP § 405.22 and the complaint did not establish the probable validity of a real property claim pursuant to CCP § 405.31. Hughes further argued that pursuant to CCP § 405.38, it was entitled to attorneys' fees and costs in bringing the motion to expunge and Sunset could not demonstrate that it was substantially justified in recording the *Lis Pendens*.

Sunset did not oppose the motion to expunge. However, prior to the hearing on the motion to expunge in July 2020, Sunset attempted to withdraw the *Lis Pendens*. At the hearing, Hughes argued that the attempted withdrawal was ineffective under California law.

The bankruptcy court reasoned that even if Sunset did voluntarily withdraw the *Lis Pendens*, an award of attorneys' fees was still possible. The court entered an order granting the motion to expunge, awarding Hughes its reasonable attorneys' fees and costs, and setting a hearing on the amount and reasonableness of fees and costs.

## C. The Fee Application

Hughes filed an application for attorneys' fees incurred in connection with the motion to expunge the *Lis Pendens* in the total amount of $54,877. Hughes argued that the extent of the work performed by counsel was largely a consequence of the multiple ways in which the *Lis Pendens* was improperly served, improperly filed, and improperly attempted to be withdrawn. Hughes asserted that Sunset's failures to comply with service and recording requirements forced it to spend time and resources finding the *Lis Pendens*, then identifying the various defects and determining how to address those defects in the motion to expunge.

Hughes contended that its counsel's hourly rates were commensurate with similar law firms in the market. It supported its application with a declaration of attorney Rolf Woolner, who attached time entries for work performed in connection with the *Lis Pendens*. Mr. Woolner stated that time entries which included both activities related to the *Lis Pendens* and tasks related to other aspects of the case, such as removal or the motion to dismiss, were not included in the application. He asserted that his firm set hourly rates annually based on employee experience and legal industry information of rates charged by peer firms, including the 2020 PricewaterhouseCoopers Survey of Los Angeles Legal Rates. Although Mr. Woolner was not permitted to make the survey public, he attached a publicly available brochure indicating hourly rates and a recent case in

which the district court determined that his firm's rates were consistent with the prevailing market rates.

Sunset opposed the application and argued no fees should be awarded because it acted with substantial justification, and an award of fees would be unjust under the circumstances because it did not oppose the motion to expunge and attempted to withdraw the *Lis Pendens*. Sunset also maintained that the requested fees were unreasonable and excessive for a simple motion to expunge. It argued that the hourly rates were excessive and cited *Barkett v. Sentosa Properties LLC*, No. 1:14-cv-01698-LJO, 2015 WL 5797828 (E.D. Cal. Sep. 30, 2015) for the proposition that the prevailing market rate should be $285 per hour.

Sunset further argued that the requested fees included work performed by partners which should have been delegated to associates or non-billable assistants. It also claimed that several entries were for conferences or communications between attorneys involved in the case without any explanation of why the motion to expunge would require such extensive communication and strategizing. Sunset asserted that counsel spent between 20 and 28 hours drafting the motion, which was substantially more time than was required. Finally, Sunset objected to block billing by one partner and $12,444 in fees incurred after the motion to expunge was filed.

Hughes filed a reply and argued that Sunset waived any argument that it was substantially justified in recording the *Lis Pendens* or that an

7

award of fees would be unjust under the circumstances because Hughes asserted its right to an award of fees in the motion to expunge and Sunset did not oppose the motion. Hughes reiterated that the motion to expunge was not a typical motion given the history of the case, the significance of the Property, and the multiple defects involved in the *Lis Pendens*. It argued that it was reasonable to hire a national law firm with experience with the Property and its history, and the cases cited by Sunset did not involve rates at the high end of the Los Angeles legal market. Hughes noted that the bankruptcy court routinely reviews fee applications in Los Angeles bankruptcy cases and is familiar with the legal market there.

The bankruptcy court held a hearing on the application for fees in August 2020. Neither party made an argument at the hearing and each relied on the written pleadings. The bankruptcy court approved the fee request and stated:

> I've read the papers and so forth, but . . . I am satisfied. This is not your usual motion to expunge a *lis pendens* given the history of this case, so it's a little unusual but I'm going to grant the application in full . . . . And basically I just stated on the record that I agree with all the arguments of the applicant and the order should just state for the reasons stated on the record that . . . good cause has been shown. The application will be approved.

*Hr'g Tr.* 4:15-19; 4:25-5:3, Aug. 11, 2020. The court entered a written order on August 24, 2020 and Sunset timely appealed.

8

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion by awarding Hughes reasonable fees under CCP § 405.38 in the amount of $54,877?

## STANDARDS OF REVIEW

We review a bankruptcy court's award of attorneys' fees to a prevailing party for an abuse of discretion. *Fry v. Dinan (In re Dinan)*, 448 B.R. 775, 783 (9th Cir. BAP 2011). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or if its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

"We review the factual determinations underlying an award of attorneys' fees for clear error." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1147-48 (9th Cir. 2001) (per curiam).

## DISCUSSION

Sunset argues that the bankruptcy court erred by failing to provide its reasoning for approving the fees and by determining that the requested fees were reasonable.

In a bankruptcy proceeding, a prevailing party may be entitled to fees under applicable state law if state law governs the substantive issues in the proceeding. *Bertola v. N. Wis. Produce Co., Inc. (In re Bertola)*, 317 B.R.

9

95, 99 (9th Cir. BAP 2004). The *Lis Pendens* was expunged pursuant to state law, so attorneys' fees were awardable under state law.

Under CCP § 405.38,[3] "a prevailing party on a motion to expunge a lis pendens is **entitled** to recover attorney fees." *Castro v. Super. Ct.*, 116 Cal. App. 4th 1010, 1018 (2004). The attorneys' fee provision was originally enacted to "mitigate against and control misuse of the lis pendens procedure." *Trapasso v. Super. Ct.*, 73 Cal. App. 3d 561, 569 (1977). The statute was later revised to make an award of fees mandatory unless the court finds that the other party acted with "substantial justification" or circumstances would make the award of fees unjust. *Castro*, 116 Cal. App. 4th at 1018. The party opposing expungement bears the burden of proving it acted with substantial justification or that an award of fees would be unjust. *See Sharp v. Nationstar Mortg. LLC*, Case No. 14-cv-00831-LHK, 2016 WL 6696134, *8 (N.D. Cal. Nov. 15, 2016); *Doan v. Singh*, No. 1:13-cv-531-LJO-SMS, 2014 WL 3867418, *3 (E.D. Cal. Aug. 4, 2014).

Hughes sought an award of attorneys' fees as part of its motion to expunge and argued that Sunset was not substantially justified in

---

[3] CCP § 405.38 provides:

> The court shall direct that the prevailing party on any motion under this chapter be awarded the reasonable attorney's fees and costs of making or opposing the motion unless the court finds that the other party acted with substantial justification or that other circumstances make the imposition of attorney's fees and costs unjust.

recording the *Lis Pendens*. After the bankruptcy court granted the motion to expunge, CCP § 405.38 required it to award fees unless Sunset provided sufficient evidence that it acted with substantial justification and that an award of fees would be unjust. However, Sunset did not oppose the motion.

Although Sunset suggests that we should determine that no fees should be awarded, it waived the issue of whether an award of fees was required under the statute. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) ("[A]n issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it." (citation and quotations marks omitted)). Additionally, we see nothing in the record that indicates Sunset was substantially justified or that an award of fees would be unjust. Sunset did not attempt to withdraw the *Lis Pendens* until the week of the hearing on the motion to expunge, and the record does not indicate that the attempted withdrawal was effective.

The order granting the motion to expunge established Hughes's entitlement to fees under CCP § 405.38. The court set a further hearing to determine only the amount and reasonableness of the award, and we review only whether the bankruptcy court erred in determining whether the amount of fees requested was reasonable.

## A. The Bankruptcy Court Provided A Sufficient Explanation For Its Award Of Fees

CCP § 405.38 does not specify the method to determine "reasonable attorney's fees" but "the fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000). This is consistent with awards of reasonable attorneys' fees in federal court.

There is a "strong presumption" that the lodestar figure represents a reasonable fee. *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). Despite its presumptive reasonableness, the bankruptcy court may adjust the lodestar figure if circumstances warrant. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citing *Ferland*, 244 F.3d at 1149 n.4).

The fee applicant bears the burden of submitting evidence supporting the hours expended. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). In determining the reasonable hours expended, the court "must examine detailed time records to determine whether the hours claimed are adequately documented and whether any of them are unnecessary, duplicative, or excessive." *Gonzalez v. Aurora Loan Servs. LLC*, No. EDCV 11-00143 VAP (FFMx), 2011 WL 13224852, *2 (C.D. Cal. Feb. 25, 2011) (citing *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir. 1986), *amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987)). The party opposing the fee

12

application "has a burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the hours charged." *Gates*, 987 F.2d at 1397-98 (citing *Blum v. Stenson*, 465 U.S. 886, 892 n.2 (1984)).

Reasonable hourly rates should be determined according to "the prevailing market rates in the relevant community." *Sam K. ex rel Diane C. v. Haw. Dep't of Educ.*, 788 F.3d 1033, 1041 (9th Cir. 2015) (quoting *Van Skike v. Dir., Office of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009)). The fee applicant has the burden to produce evidence of the prevailing market rates, but the court may consider fees awarded by others in the same locality for similar cases and may rely on its "own knowledge of customary rates and [its] experience concerning reasonable and proper fees." *Id.* (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)). "Affidavits of the [party's] attorney and other attorneys regarding prevailing fees in the community . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

The bankruptcy court has "a great deal of discretion" in its decision about the reasonableness of the fee. *Gates*, 987 F.2d at 1398 (citing *Hensley*, 461 U.S. at 437). However, the court must give "some indication of how it arrived at the amount . . . to allow for meaningful appellate review." *Id.; see also Hensley*, 461 U.S. at 437 (the court must provide a "concise but clear explanation of its reasons for the fee award.").

The bankruptcy court is not required to provide "an elaborately reasoned, calculated, or worded order . . . [and] a brief explanation of how the court arrived at its figures will do." *Gates*, 987 F.2d at 1398 (quoting *Chalmers*, 796 F.2d at 1211 n.3). If there is a large difference between the amount requested and the bankruptcy court's award, "a more specific articulation of the court's reasoning is expected," but where the difference is relatively small, "a somewhat cursory explanation will suffice." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

Here, the bankruptcy court gave a very cursory explanation for its decision. It merely stated that it agreed with Hughes's arguments and after reviewing the papers, it would grant the full amount requested based on the history of the case. But under these circumstances, the bankruptcy court's explanation is sufficient to permit meaningful appellate review.

The bankruptcy court awarded the full amount requested by Hughes without making any adjustment. When the court accepts the lodestar amount without adjustment, it need only determine that the hourly rates and the hours expended by counsel were reasonable. *See Pennsylvania v. Del. Valley Citizens' Council for Clear Air*, 478 U.S. 546, 564 (1986) ("[The lodestar] is more than a mere 'rough guess' or initial approximation of the final award to be made . . . . '[w]hen . . . the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product **is presumed** to be the reasonable fee' to which counsel is entitled." (quoting *Blum*, 465 U.S. at 897)).

14

By awarding the full amount requested in the application, the bankruptcy court satisfied the minimum requirement that it "set forth the number of hours compensated and the hourly rate applied." *Chalmers*, 796 F.2d at 1211 n.3. Although it did not state on the record that the rates and hours were reasonable, it necessarily concluded so by considering Hughes's time entries and evidence of the prevailing market rate and by stating that it agreed with Hughes's arguments.

**B.    The Bankruptcy Court Did Not Clearly Err By Determining The Fees Were Reasonable**

Sunset argues that the hours spent by Hughes's attorneys were excessive based on several decisions in which courts determined that a motion to expunge a *lis pendens* is not a complex matter. We agree that a typical motion to expunge a *lis pendens* should not require substantial attorney time. But in an exceptional case, a bankruptcy court may find substantial attorney time to be reasonable. *See Baptiste v. Spizzirri*, No. SACV 18-00084 AG, 2018 WL 6074525, *1-2 (C.D. Cal. May 31, 2018) (awarding approximately two thirds of requested fees of $80,182 for 156 hours billed by multiple attorneys based on "exceptional features" of the case); *see also Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 553 (2010) ("novelty and complexity of a case . . . presumably [are] fully reflected in the number of billable hours recorded by counsel." (citation and quotation marks omitted)).

15

If we were determining what fee would be reasonable in the first instance, our calculation might differ from that of the bankruptcy court, "but that does not mean that the court abused its discretion." *Vargas v. Howell*, 949 F.3d 1188, 1198 (9th Cir. 2020). "Reasonable people may differ as to what number of hours was **reasonable** to spend on this case. But once we are satisfied that the [bankruptcy] court has considered the appropriate factors for the appropriate reasons, our reviewing function is finished." *Cunningham v. Cty. of L.A.*, 879 F.2d 481, 486 (9th Cir. 1988).

The bankruptcy court reviewed the time entries submitted by Hughes and considered Sunset's objections. It determined that the motion was not a usual motion to expunge given the history of the case. In awarding fees, "trial courts may take into account their overall sense of a suit . . . [a]nd appellate courts must give substantial deference to these determinations, in light of 'the [bankruptcy] court's superior understanding of the litigation.'" *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley*, 461 U.S. at 437).

Finally, Sunset argues that the evidence submitted by Hughes was not relevant to support the prevailing market rate in the relevant community because the fee survey involved only large firms engaged in complex litigation. But, in addition to the evidence submitted by Hughes, the bankruptcy court can rely on its own knowledge and experience in determining the prevailing market rate. *Sam K. ex rel. Diane C.*, 788 F.3d at 1041. Sunset cites several cases in which a court determined a lesser hourly

16

rate, but these cases arose in the Eastern District of California and none involved the relevant community at issue in this case.

Sunset has not demonstrated that the bankruptcy court clearly erred in finding the hours expended and the hourly rate reasonable. The court did not abuse its discretion in approving the attorneys' fees awarded to Hughes.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's order approving Hughes's application for attorneys' fees.