**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVID VAN SKIKE,

                    *Petitioner,*

            v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS; CENEX
HARVEST STATES COOPERATIVE;
LIBERTY NORTHWEST INSURANCE
CORP.,

                    *Respondents.*

No. 07-73886

BRB Nos.
06-0904
07-0118

OPINION

On Petition for Review of an Order of the
Benefits Review Board

Argued and Submitted
November 17, 2008—Portland, Oregon

Filed March 2, 2009

Before: William A. Fletcher and Raymond C. Fisher,
Circuit Judges, and John M. Roll,* District Judge.

Opinion by Judge Roll

*The Honorable John M. Roll, United States District Judge for the District of Arizona, sitting by designation.

**COUNSEL**

Charles Robinowitz, Portland, Oregon; Joshua T. Gillelan II (argued), Longshore Claimants' National Law Center, Washington, D.C., for the petitioners-appellants.

John Dudrey, Williams Fredrickson, LLC, Portland, Oregon, for the respondents-appellees.

**OPINION**

ROLL, Chief U.S. District Judge:

This is an appeal from the Benefits Review Board's ("BRB") affirmance of attorney's fee awards granted by the Administrative Law Judge ("ALJ") and the District Director ("DD") in a matter arising under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950. After prevailing on every contested issue on a claim for hearing loss benefits, David Van Skike's attorney, Charles Robinowitz, claimed compensation at a market rate of $350 per hour. The bulk of the litigation on the benefits claim had occurred before the ALJ, but the DD resolved several issues in the case as well. After reviewing the evidence submitted by both parties as to what hourly rate was appropriate, and after accounting for the applicable attorney-fee regulation, 20 C.F.R. § 702.132(a), the ALJ granted Robinowitz a rate of

$250 per hour for his time expended litigating before the ALJ; based upon the complexity of the issues heard before her, the DD granted Robinowitz a rate of $235 per hour for his time expended litigating before the DD. The BRB affirmed both awards, finding that the ALJ and the DD properly applied § 702.132(a) in arriving at their respective hourly rates.

On appeal Van Skike argues that the fee awards were arbitrary, capricious, and an abuse of discretion, because both the ALJ and the DD rejected evidence proffered by Robinowitz as to his market rate and instead relied upon past LHWCA awards by other ALJs and DDs in arriving at their determinations. Van Skike further argues that the DD erred in reducing his market rate for lack of complexity. Finally, Van Skike argues that the DD erred by not awarding Robinowitz an enhanced fee for delay in payment. We have jurisdiction under 33 U.S.C. § 921(c), and we vacate and remand in part, and affirm in part.

## FACTS AND PROCEDURAL HISTORY

### Proceedings Before the ALJ

Robinowitz argued that a market rate of $350 per hour was appropriate given his general experience, his consultation with a lawyer who testifies as an attorney's fee expert, various fee awards he and other attorneys had been granted in the past, fee agreements he had obtained in non-contingent work, and the *Laffey*[1] matrix.[2] Respondent Cenex objected that the

---

[1] The matrix is derived from the hourly rates allowed by the district court in *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983).

[2] More specifically, Robinowitz claimed his normal billing rate was $350 per hour based upon the following: (1) he had been a trial lawyer in private practice in Portland, Oregon since 1969, had represented over 1,000 maritime workers under the LHWCA, and had handled over 500 jury and court trials; (2) he consulted with William Crow, a trial attorney who had testified numerous times as an attorney fee expert, and Crow told

rate was incommensurate with the relevant prevailing market rate, and argued that recent LHWCA awards established that a figure somewhere between $200 and $235 was appropriate. Respondent Cenex also cited a number of contemporaneous LHWCA cases in which Robinowitz had been awarded between $200 and $250 per hour by ALJs and DDs.

In his Supplemental Decision and Order Granting Attorney's Fees, issued on July 14, 2006, ALJ William Dorsey considered and rejected each of Van Skike's proposed grounds for a $350 per hour rate.[3] The ALJ discussed the per-

---

him that his hourly rate should be approximately $350 per hour in cases of this type; (3) in March 2006 the Oregon Court of Appeals awarded him an hourly rate of $350 per hour in a discrimination case, and in May 2006 the Ninth Circuit awarded him $300 per hour for legal services in *Christensen v. Director, OWCP*, Ninth Circuit No. 04-70965; (4) Seattle attorney William Hochberg, an attorney with less LHWCA experience than Robinowitz, received a $300 per hour fee award from the Ninth Circuit in 2005, and Savannah, Georgia attorney Ralph Lorberbaum, an attorney with similar LHWCA experience to Robinowitz, received a $300 per hour fee award for an LHWCA claim in 2003; (5) in late 2005 two clients retained him at $275 per hour, and in spring 2006 three individual clients retained him at $300 per hour; (6) the Board had awarded him $250 per hour in each LHWCA case he handled since 2004; and (7) the *Laffey* matrix supported an hourly rate of $400, when adjusted for Portland cost of living figures.

[3]With respect to the attorney fee expert relied upon by Robinowitz, the ALJ found that the attorney's statement was essentially hearsay which carried with it no substantial guarantee of trustworthiness, and he further found little evidence that the alleged expert opinion was based upon a knowledge of litigating longshore claims. With respect to the $350 per hour award granted by the Oregon Court of Appeals to Robinowitz, the ALJ noted that Robinowitz himself admitted that the award was enhanced for risk of loss, which the Supreme Court outlawed in *City of Burlington v. Dague*, 505 U.S. 557 (1992); as to the Ninth Circuit's $300 per hour award in *Christensen*, the ALJ found that as the basis of the award was not articulated but rather stated summarily, it did not establish a market rate of $350 per hour for Robinowitz. With respect to Seattle attorney William Hochberg's $300 per hour award, the ALJ similarly found that, as the

tinent law regarding fee litigation, including the lodestar calculation and the regulation pertaining to attorney's fees in longshore matters, 20 C.F.R. § 702.132(a). The ALJ concluded that it would be error to award Robinowitz a $350 per hour fee award, as he had failed to establish a "normal billing rate" under the regulation. The ALJ concluded that the "best proxy" for a normal billing rate was $250 per hour, based upon what other trial judges and the BRB had granted Robinowitz in recent LHWCA cases. It is not clear from the record whether these cases had been litigated in the Portland area or elsewhere.

Van Skike filed a timely Motion for Reconsideration, along with an affidavit and supporting memorandum of law,

---

basis of the award was not disclosed and the record was not before the ALJ, that example did not establish a market rate of $350 per hour for Robinowitz. The ALJ also found that Savannah attorney Ralph Lorberbaum's $300 per hour award did not establish a market rate for Robinowitz, because the legal services were performed outside Portland, the employer in that case, unlike Cenex, failed to prove or even suggest that a lower rate should have been granted, and furthermore the trial judge in that case had reduced the hours claimed by Lorberbaum, reasoning that someone who deserved that rate ought to have completed the tasks more expeditiously. With respect to the non-contingent fees Robinowitz claimed he obtained from paying clients, the ALJ found that while those fee agreements "are some evidence of what he can obtain for his services in the open market," they still failed to show "whether he billed for a significant portion of his professional services at those rates, or just a few hours of his time." The ALJ concluded that the evidence proffered by Robinowitz was "too thin" to establish that $350 per hour was his normal billing rate. With respect to previous awards by the BRB to Robinowitz, the ALJ noted that no agency adjudicators ever granted him fees approaching $350 per hour, and found that awards to him up to that point clustered at "the lower to mid $200s per hour." Finally, with respect to the *Laffey* matrix, the ALJ rejected Van Skike's proposed method for updating it, noting that the original data were never gathered with statistical rigor, and concluded that even if the matrix were updated, it should properly apply only to the complex federal litigation involved in *Laffey*, rather than the less complicated LHWCA claim under discussion.

responding to the ALJ's findings. Robinowitz quantified his non-contingent billing, included the Morones Survey of 2004, which showed the average fees charged by commercial litigators in Portland, and included a copy of the previously cited Ninth Circuit's unpublished *Christensen* order, awarding him attorney's fees of $300 per hour. In an August 10, 2006 order, the ALJ denied the motion, once again concluding that in the absence of "meaningful proof of what hourly clients pay Mr. Robinowitz, or of what lawyers who are appropriate comparators charge, the awards judges have made to him in comparable cases" were appropriately consulted to "estimate the 'normal billing rate' the regulation looks to."

*Proceedings Before the DD*

Robinowitz also applied to the DD, Office of Workers' Compensation Programs ("OWCP"), for an award which entailed a $350 rate. Respondent Cenex once again challenged the hourly rate as inconsistent with the relevant prevailing market rate. DD Karen Staats, after reviewing the responses and objections, concluded that given the considerations contemplated by § 702.132(a), "there is nothing in this fee request that justifies a rate of $350.00 for legal services provided in this claim at the DD level." The DD noted that $250 per hour was an appropriate rate for work performed before the ALJ, but granted Robinowitz only $235 per hour, based upon what she deemed to be a lack of complexity in the work Robinowitz performed before her.

Van Skike again filed a timely Motion for Reconsideration, reiterating many of the same arguments he made before the ALJ. The DD denied the motion on September 19, 2006, stating that the fee was approved in accord with the applicable statutory and regulatory criteria as well as the circumstances of the case.

*Proceedings Before the BRB*

Van Skike appealed both fee awards to the BRB. The BRB found that the ALJ "fully addressed the evidence of hourly rates provided by counsel to establish a customary, community market rate, and he provided a rational basis for finding such evidence insufficient to establish an hourly rate of $350." The BRB concluded that Robinowitz "failed to demonstrate either legal error or an abuse of discretion" in the ALJ's reliance on recent fee awards to him by other judges and the BRB in arriving at an hourly rate of $250.[4] The BRB found that the DD "independently based her award of $235 per hour on the regulatory criteria of Section 702.132(a)," compelling the conclusion that there was no abuse of discretion. Finally, the BRB found that the DD did not err in failing to address a possible rate enhancement for delay in payment, as "counsel did not seek an hourly rate enhanced for delay."

## STANDARD OF REVIEW

The decision of the BRB is reviewed for substantial evidence and errors of law. *Marine Power & Equipment v. Dept. of Labor*, 203 F.3d 664, 667 (9th Cir. 2000). The ALJ's findings of fact must be accepted by the BRB unless they are contrary to law, irrational, or unsupported by substantial evidence. *Id.*; *see also Parks v. Newport News Shipbuilding & Dry Dock Co.*, 32 BRBS 90 (1998). An appellate court must conduct an independent review of the administrative record to determine whether the BRB adhered to this standard of review. *Marine Power*, 203 F.3d at 667. A decision by the BRB is supported by substantial evidence if there exists "such relevant evidence as a reasonable mind might accept as ade-

---

[4]The BRB cited with approval *Newport News Shipbuilding & Dry Dock Co. v. Brown*, 376 F.3d 245, 251 (4th Cir. 2004), for the proposition that "[e]vidence of fee awards in *comparable cases* is generally sufficient to establish the prevailing market rates in the relevant community." (internal quotation marks and citations omitted) (emphasis added).

quate to support a conclusion." *E.P. Paup Co. v. Dir., OWCP*, 999 F.2d 1341, 1353 (9th Cir. 1993) (internal quotation marks omitted). No special deference is accorded to the BRB's interpretation of the LHWCA, but reasonable interpretations are respected. *Port of Portland v. Dir., OWCP*, 932 F.2d 836, 838 (9th Cir. 1991).

## DISCUSSION

*Exclusive Reliance on Contemporaneous LHWCA Cases to Set a Market Rate*

Van Skike argues on appeal that the ALJ abused his discretion and committed legal error when he rejected in their entirety the market indicators submitted by Robinowitz and instead relied on other decisions in previous cases, when the judges in those previous cases failed to base their fee awards on market rates. Respondent Cenex contends that the ruling of the ALJ was predicated upon the applicable regulation, § 702.132(a), and that because Van Skike failed to establish a "normal billing rate," the ALJ properly relied on hourly rate decisions in other LHWCA cases.

**[1]** The Supreme Court has consistently held that reasonable fees "are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The burden is on the fee applicant himself "to produce satisfactory evidence" of the relevant market rate. *Id.* at 896 n.11. Case law construing reasonable fees "applies uniformly" to fee-shifting statutes such as the LHWCA, *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992), and, as with other federal fee-shifting statutes, the use of the lodestar method (number of hours reasonably expended multiplied by reasonable hourly rate) in calculating attorney's fees under the LHWCA is proper. *See Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 955 (9th Cir. 2007).

**[2]** The relevant community is generally defined as "the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). In *Christensen v. Price*, Ninth Circuit No. 07-70297, filed today, we note the problems inherent in narrowly defining the relevant community in LHWCA cases strictly in terms of what other ALJs, DDs, and the BRB have awarded fee claimants in contemporaneous cases. In doing so we reject the Fourth Circuit's overly circumscribed definition of "relevant community" advanced in *Brown*, relied upon by the BRB in the instant case in affirming the awards granted by the ALJ and the DD. First, exclusive reliance on contemporaneous LHWCA cases does not constitute an appropriate determination of a market rate as contemplated by relevant case law. In *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008), this court recently found unreasonable a district court's award of attorney's fees pursuant to 42 U.S.C. § 1988, because the district court had applied "what appear[ed] to be a de facto policy of awarding a rate of $250 an hour to civil rights cases." Such a policy ignores current market conditions while deferring to historical market rates, which is clearly not contemplated by *Blum*. Exclusive reliance on contemporaneous LHWCA cases also overlooks the fact that LHWCA attorneys are forbidden by law from, and face criminal penalties for, negotiating or entering into private fee agreements with their clients. *See* 33 U.S.C. § 928(e). The lack of a private LHWCA market does not absolve courts of the duty to arrive at a market rate. As we note today in *Christensen*, the relevant community must necessarily be defined more broadly than the LHWCA bar. Finally, exclusive reliance on contemporaneous LHWCA cases is contrary to the rationale behind fee-shifting statutes in general. In *Camacho v. Bridgeport Financial, Inc.*, in which an attorney's fee award in a Fair Debt Collection Practices Act ("FDCPA") case was vacated because the district court failed to make findings regarding what constituted the relevant community or an appropriate market rate, we reiterated that "[i]n order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that coun-

sel be awarded fees commensurate with those which they could obtain by taking other types of cases." 523 F.3d 973, 981 (9th Cir. 2008) (internal quotation marks omitted and alteration in original). Arbitrarily holding the line at past court-generated fee awards does not respect the congressional intent animating fee-shifting statutes. *See Student Pub. Interest Research Group of N.J. v. AT&T Bell Labs.*, 842 F.2d 1436, 1446 (3d Cir. 1988) ("Courts that try to establish public interest market rates by looking to the going rate for public interest work therefore do not examine an independently operating market governed by supply and demand, but rather recast fee awards made by previous courts into 'market' rates . . . [thereby] . . . perpetuat[ing] a court-established rate as a 'market' when that rate in fact bears no necessary relationship to the underlying purpose of relying on the marketplace: to calculate a reasonable fee sufficient to attract competent counsel.").

**[3]** As stated in *Christensen*, the same concerns expressed in *Camacho* and *Moreno* as to other fee-shifting cases apply with equal force to LHWCA cases. It is true that the remand for the fee determinations in *Christensen* occurred largely because the BRB did not adequately justify its awards. The instant case is distinguishable from *Christensen* in that both the ALJ and the DD here provided, for the most part, detailed analyses of the evidence proffered by Van Skike to establish a prevailing market rate. The exclusive reliance by the ALJ and the DD on contemporaneous LHWCA cases remains problematic, however, given the guidance of *Camacho*, *Moreno*, and now *Christensen*. The relevant community must be defined "more broadly than simply fee awards under the LHWCA." *Christensen*, Ninth Circuit No. 07-70297 at 9. Finally, *Christensen* states that the failure of a fee applicant to carry his burden under *Blum* as to the establishment of a relevant market may justify courts in looking to what other ALJs and the BRB have awarded a fee applicant in contemporaneous LHWCA cases, but it also states that if the reasons given by a court for such a failure "would not have been

anticipated by a reasonable fee applicant," "it may be appropriate . . . to allow an applicant to cure its failure to carry the burden." *Id.* at 10.

**[4]** Under the circumstances presented by this case, particularly considering the detailed justification proffered by Van Skike to establish a relevant market rate, it is appropriate to vacate the fee awards arrived at by the ALJ and the DD and to remand the case for reconsideration of Van Skike's proposed rate in light of the guidance provided by *Christensen* and this opinion. The ALJ and the DD may then decide whether it is proper to award a different fee or to allow Van Skike to modify his fee request in an attempt to cure what they originally deemed a failure to establish a market rate.

*Reduction of Hourly Rate Based Upon Complexity of Task*

Van Skike argues on appeal that the DD committed legal error when she awarded a lower hourly rate than the ALJ due to what she deemed to be a lack of complexity of the issues heard before her. He argues that such a practice is inconsistent with all other fee-shifting regimes Congress has authorized and further contends that *Blum* forbids the DD from considering the complexity of the legal issues involved in computing an hourly rate, as opposed to considering that factor in computing the number of hours allowed. Respondent Cenex contends that the DD properly applied § 702.132(a) and that the BRB properly affirmed her fee determination.

**[5]** Attorney's fee awards under the LHWCA are to be "reasonably commensurate with the necessary work done and shall take into account the quality of the representation, the complexity of the legal issues involved, and the amount of benefits awarded." 20 C.F.R. § 702.132(a). While the regulation does not expressly mandate the use of the traditional lodestar method, it does permit the consideration of lodestar factors not explicitly listed, and it also sets forth at least four of the eleven factors to be considered. *See Van Gerwen v.*

*Guarantee Mutual Life Co.*, 214 F.3d 1041, 1045 n.2 (9th Cir. 2000) (listing the lodestar factors). The Supreme Court has stated that the lodestar is the "guiding light" of its fee-shifting jurisprudence, a standard that is the fundamental starting point in determining a reasonable attorney's fee. *Dague*, 505 U.S. at 562. Moreover, in the instant case the DD used the lodestar method in calculating the fee award. In doing so, however, she deviated from the admonition that the reasonable hourly rate is generally determined based upon the prevailing rate in the relevant community, rather than upon the complexity of the issues, which should be reflected in the reasonable number of hours. *See Blum*, 465 U.S. at 895. Here, as in *Blum*, the "novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel." *Id*. at 898. Therefore, "[n]either complexity nor novelty of the issues . . . is an appropriate factor in determining whether to [decrease] the basic fee award." *Id*. at 898-99.[5]

**[6]** A formulaic recitation of the regulations pertaining to LHWCA fee awards is insufficient to absolve the DD from compliance with relevant case law outlining the lodestar methodology. Reducing an hourly rate based upon a lack of complexity and the routine nature of the work is inconsistent with other fee-shifting regimes Congress has adopted or the Supreme Court has approved. 20 C.F.R. § 702.132 does not specifically require that the reasonable *rate* determination turn upon the complexity of the issues, so it was incumbent upon the DD to consistently apply the prevailing lodestar methodology, which accounts for complexity in the hours and not in the rate computation. It is appropriate, therefore, to vacate the DD's determination to reduce the fee award based upon lack of complexity and to remand to her so that she can recalculate the award in light of the foregoing guidance.

---

[5]It would be illogical and burdensome under any fee-shifting statute, for instance, to attempt to distinguish between an attorney's hourly rate for a 15-minute phone call with the clerk's office concerning a technical procedural issue and a 15-minute phone call with a client providing expert substantive advice based on how the procedural issue was resolved.

*Delay Enhancement*

Van Skike argues on appeal that the DD committed legal error when she failed to enhance the fee award to Robinowitz for delay in payment. Respondent Cenex contends that since Van Skike did not raise this issue before the DD, it is not reviewable by the panel.

[7] A review of the administrative record reveals that Van Skike never raised the delay enhancement argument either in his initial application for fees to the DD or in his motion for reconsideration. He did eventually brief the issue to the BRB, but the BRB declined to consider it because it found he raised it for the first time on appeal. Van Skike contends in his Reply Brief that his mere request for a $350 per hour current market rate was sufficient not only to raise the delay issue but to preserve it on appeal. It is clear from the fee affidavit and from the orders drafted by both the ALJ and the DD that the common issue under consideration was not delay but whether Robinowitz's $350 per hour request represented his normal billing rate or the current prevailing market rate. Because Van Skike never effectively raised the prospect of delay, the BRB was not required to reach the issue. *See Johnson v. Dir., OWCP*, 183 F.3d 1169, 1171 (9th Cir. 1999) (holding in LHWCA case that, unless necessary to prevent manifest injustice, Ninth Circuit will not review issue not raised below); *Smiley v. Dir., OWCP*, 984 F.2d 278, 281 (9th Cir. 1992) (stating that Ninth Circuit will reach an issue of law of which the ALJ and the BRB were aware and which BRB promised to consider; reaffirming that the standard for whether issue was properly raised below is that argument must be sufficient for trial court to rule on it); *Perkins v. Marine Terminals Corp.*, 673 F.2d 1097, 1100 (9th Cir. 1982) (holding that BRB lacked authority to raise LHWCA coverage issue sua sponte when issue was not previously raised before ALJ). The BRB's decision was therefore proper, given the factual circumstances and the applicable law.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART**. Each party shall bear its own costs on appeal.